FARRELL v. RYAN et al.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

CONTRACTS—ABANDONMENT—ACTION—INSTRUCTIONS.

Defendant contracted to purchase a quantity of stone for use in certain work, the stone to be delivered at a certain place, and paid for in cash on delivery. In an action by the receiver of the seller against defendant for alleged wrongful refusal to accept and pay for the stone, it was shown that the stone was quarried and ready for delivery at a time when defendant was not in a situation to receive it as stipulated by the contract. There was testimony on defendant's behalf that before the cutting of the stone had been finished, he had made advances of money to the seller, which were payments on the stone, and that it properly belonged to him. It also appeared that after the seller went into the hands of a receiver, a dispute arose as to the disposition to be made of the stone, defendant demanding it and the receiver refusing to deliver it without payment of the price. Thereafter the receiver applied to the court for instructions, and was authorized to deliver the stone upon deposit by defendant of a certain sum, to be held by the depositary subject to the further order of the court. Held, that it was evident that the parties did not regard the original contract as being still in force, so that an instruction that plaintiff could not recover without proof that it had always been ready and willing to deliver the stone under the very terms of the contract was error.

Appeal from Trial Term, New York County.

Action by Edward D. Farrell, as receiver of the Cobleskill Quarry Company, against Patrick Ryan and others. From a judgment for defendants and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Herman Aaron, for appellant.
H. S. Marshall, for respondents.

PATTERSON, J. The plaintiff is the receiver of the Cobleskill Quarry Company, a corporation, and brought this action originally

to enforce a mechanic's lien for stone which was taken from a quarry belonging to that corporation, and was cut in accordance with a contract; the stone thus quarried and cut being intended for use by the firm of Shanly & Ryan (of which the defendant Ryan is the surviving partner) in constructing the anchorage on the Brooklyn side of what is called the "New East River Bridge." Failing to establish the right to a lien, the action was continued as one at law to recover damages against Ryan for the breach of the contract, the alleged breach being the refusal of Ryan to receive and pay for the stone thus quarried and cut. There were other defendants, but they are discharged from the action, and have no interest in the present appeal. The defendant Ryan denied the allegations of the breach of the contract by him, and set up in his answer that the firm of Shanly & Ryan and a corporation known as the Degnon McLean Construction Company entered into a written contract with the Cobleskill Quarry Company, which provided as follows:

"That Shanly & Ryan as one party and the Degnon McLean Construction Company as another party have equal rights to purchase from the Cobleskill Quarry Company the limestone requisite for the fulfilment of contracts respectively held by them for the construction of the New York & Brooklyn Anchorage of the New East River Bridge. Such limestone to be delivered alongside the dock at New York and Brooklyn respectively, at the rate of five dollars per cubic yard. Said vendees to pay cash on delivery of limestone made to them respectively."

The defendant Ryan sets forth in his answer that after the making of the contract he from time to time ordered stone from the Cobleskill Quarry Company and certain stone was delivered up to the 30th of August, 1900; that after that date no further or other stone was delivered in accordance with the terms of the contract or otherwise; that in May, 1900, he (Ryan) notified the Cobleskill Quarry Company that his work on the anchorage referred to in the contract had been delayed, but that he would in the future require a further supply of stone under the terms of the contract, and offered to pay the expenses of quarrying, cutting, and preparing the stone, and to pay the expense of the company during the time requisite for the quarrying, cutting, and preparing of the stone, provided the money so advanced by the defendant should be credited to him upon the purchase price of the stone to become due from the defendant to the Cobleskill Quarry Company in accordance with the terms of the contract; that the Cobleskill Company accepted the offer, and the defendant did actually, in accordance with the terms of the offer and acceptance, pay the sum of $10,000 to defray the expense of quarrying, cutting, and preparing the stone and the expenses during the period of quarrying, cutting, and preparing the stone, and that the Cobleskill Quarry Company received and accepted the sum of $10,000 in accordance with the terms of said offer and acceptance. The defendant thus set up a variation of the original contract and the making of a new arrangement. He then alleged as a separate and distinct defense and counterclaim that the Cobleskill Quarry Company, for a good and valuable consideration, contracted and agreed to deliver to the defendant 4,341

cubic yards of limestone, to be delivered at dock in New York at the price of $5 per cubic yard; that the receiver adopted, ratified, accepted, and became bound by the obligation of the contract between the defendant and the Cobleskill Quarry Company; that the plaintiff wholly failed to perform the contract, in that he neglected and refused to deliver the said stone, although requested to do so by the defendant; and claimed a large sum of money as damages for the breach of the contract by the receiver. The cause was tried upon the claim of the receiver and the counterclaim of Ryan, and resulted in a verdict for the defendant on the counterclaim. Judgment was entered upon the verdict for the sum of $14,882.66, and from that judgment and from an order denying a motion for a new trial the plaintiff appeals.

There was conflicting evidence before the jury relating to what was done under the original contract. It appeared in evidence that the capital stock of the Cobleskill Quarry Company was owned by the Degnon McLean Construction Company and by Shanly & Ryan in equal portions. The last-named corporation and the firm seem to have been the virtual owners and proprietors of the Cobleskill Quarry. They were contractors for the building of anchorages of the New East River Bridge, and their contract with the Cobleskill Quarry Company was for stone to be quarried and cut for that work. It is in evidence that the stone was quarried and cut, and was useless for any other construction than that of the anchorages. It appears in evidence that when the stone thus quarried and cut was ready for delivery, the firm of Shanly & Ryan, or the defendant Ryan, was not in a situation to receive that stone at the place of delivery appointed in the contract. Ryan denies this, but that presented an issue to the jury. The plaintiff insists that upon the testimony it was shown that Ryan committed a breach of the contract by not accepting the stone on a tender made. On the other hand, Ryan's claim is that he made advances of money which were payments for the stone, and that the stone belonged to him as surviving partner. In answer to that the plaintiff insists that the moneys advanced by Ryan were not in payment for the stone, but were advances on a general account, and were of a similar character to other advances made by the Degnon McLean Construction Company for the general business of the Cobleskill Quarry Company.

It is evident from the correspondence appearing in the record that a serious dispute existed between the receiver and Ryan relating to this stone and Ryan's attitude concerning it. On November 4, 1902, Ryan wrote a letter to the receiver in which he gave notice "that the stone upon the ground of the Cobleskill Quarry Company at Cobleskill, N. Y., which has been quarried and cut for account of contract made by Shanly & Ryan with the Cobleskill Quarry Company for use on the New York anchorage of the New East River Bridge, and which has been fully paid for by us and is our property, we now respectfully request and demand that the same be delivered to us. Respectfully yours, Shanly & Ryan. P. Ryan, surviving member of the firm of Shanly & Ryan." On the 14th of February, 1903, the receiver wrote to Mr. Ryan, as surviving

partner of Shanly & Ryan, a letter, in which he stated that the stone which was cut by the Cobleskill Quarry Company for the defendants for the New York anchorage of the New East River Bridge "has been completed and awaiting delivery and payment for so long a period that it becomes my duty to take action concerning the same, unless the stone is promptly taken up and paid for by you. I am prepared to deliver the stone upon receiving payment therefor, and request that you give directions accordingly."

In this situation of the matter, the receiver on November 5, 1902, applied to the court for instructions as to his duty in the premises— whether he should deliver the stone to Ryan without payment therefor; and, if an order was not made in regard thereto, he asked the court to advise and direct him as to what disposition he should make of the stone. An order to show cause, upon the application of the receiver, was granted, and in obedience thereto Mr. Ryan appeared and presented to the court an affidavit setting forth his relations to the stone substantially in the manner above indicated, and he set up that performance of the contract on his part was postponed in consequence of delays in the performance of the work of other contractors upon the bridge; that he was then ready to receive the stone, of which he claimed to be the owner, and that he was willing that the same should be delivered by the receiver at the anchorage of the bridge pursuant to the contract, or, if the court so ordered, he was willing to give any bond for the value of the stone to the receiver, conditioned to pay any amount that may be found due and payable to the receiver in any action which might be brought by said receiver. Thereupon the court made an order that the motion of the receiver for instructions be granted, and that he be authorized and directed to permit Ryan, the claimant, to take the stone described in the petition at its present location in the quarry at Cobleskill, N. Y., upon receiving from Ryan the sum of $16,280 therefor, and that that amount be specially deposited to the credit of the receiver with the City Trust Company of New York, subject to the further order of the court to be made in regard thereto on notice to all parties interested. Ryan did not appeal from that order, and failed to comply with it. Subsequently to its being made, and in December, 1902, Ryan again demanded the stone, and the receiver refused to comply therewith, unless the order of the court requiring the deposit of money was obeyed.

The attitude of the respective parties is disclosed by the correspondence referred to, but previously to the appointment of the receiver the Cobleskill Company, being in need of money for its business purposes, pledged this stone to the Manhattan Bank of New York City for an advance, and, Ryan claims, thus disabled itself from delivering the stone which he insists belonged to him. It seems that the loan has been paid off. Enough has been said to show that, irrespective of other issues, what was in contest between the receiver and Ryan in this action was the ultimate relations established between the Cobleskill Company or the receiver and Ryan by the various alleged changes and modifications, if they were made, of the original tripartite agreement. It became of prime importance

in the case that the jury should determine from all the evidence what were those ultimate relations of the receiver and Ryan to each other with respect to the receiver's right of action. The court charged the jury as follows:

"The receiver can recover in this action that amount of money, or any amount of money, only upon having proved to you to your satisfaction, by a preponderance of evidence which you credit, that the stone was quarried on the order of Shanly & Ryan, and that the plaintiff (that is, the receiver —the company before him and the receiver after) was always ready and willing to deliver it under the very terms of the contract."

There can be no mistake respecting what was meant by that instruction, for after the case had been submitted to the jury, and they retired, they sent to the court the following request, namely:

"The jury requests to know whether they can consider the intention of carrying out the contract, or whether they must exclusively abide by the written wording of the contract, and render their verdict accordingly. James K. Gallagher, Foreman."

To which the court returned the following answer:

"The parties having embodied the terms of their agreement in writing, it is to be assumed that the instrument expresses and legally implies their intention."

That instruction was erroneous, and altogether misleading. The importance attached to it is manifested by the inquiry of the jury. They were bound by the instruction, which held the Cobleskill Company and the receiver to the very words of the original contract respecting the delivery of the stone at the city of New York, while there was evidence from which the jury could have found that that term of the contract, at least, had been abandoned by Ryan. They were required to ignore everything that had been done, and to confine themselves to the strict letter of a contract, which both parties seem to have regarded as no longer literally in force.

. The instruction is fatal to the verdict and the judgment, and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur; McLAUGH-LIN, J., in result.